IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HEATHER KLEMP-HAHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERTO SALAS, and | ) |
| VILLAGE OF FOREST PARK, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Heather Klemp-Hahn complains of Defendants Roberto Salas and Village of Forest Park, states as follows:

### Introduction

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2.      This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

### Factual Background

4.      Plaintiff Heather Klemp-Hahn is a 47-year old woman who resides in the Village of Forest Park, Illinois with her 8-year old son. She lived in Forest Park for approximately 11 years prior to the events at issue in this case.

1

5.     Ms. Klemp-Hahn is married but currently separated from her husband Phillip Petricig.

6.     Ms. Klemp-Hahn and Mr. Petricig had a volatile relationship. They fought frequently, and Mr. Petricig was often abusive and violent toward Ms. Klemp-Hahn. Both of them had frequent contact with the Forest Park Police Department in connection with the fights and instances of abuse that took place over the years.

7.     The Forest Park Police Department is a very small police force, with approximately 38 officers.

8.     Ms. Klemp-Hahn lived just over a block away from the Police Department and has become familiar with members of that Department over the years.

9.     On information and belief, it was generally known among officers in the Department that Ms. Klemp-Hahn had a long-term history of being the victim of domestic abuse.

**Ms. Klemp-Hahn Obtains A Two-Year Order of Protection,
Requiring Her Husband To Move Out of the Home**

10.     On August 16, 2016, Mr. Petricig once again became violent. This time he physically assaulted not only Ms. Klemp-Hahn but also her son.

11.     As she had often done in the past, Ms. Klemp-Hahn called the Forest Park Police Department to report that report the incident. Officers responded to Ms. Klemp-Hahn's home and arrested Mr. Petricig.

12.     Determined not to be the victim of abuse any longer, Ms. Klemp-Hahn subsequently petitioned the court for an order of protection against Mr. Petricig. Her petition was granted, and a two-year order of protection was entered on August 24, 2016.

13.     Under the terms of the terms of the protective order, Mr. Petricig was required to move out of the home.

14.     The order further indicated that Mr. Petricig would have access to the home at 10:00am on August 30, 2016 for the sole purpose of removing his belongings and that the Forest Park Police Department was to supervise his removal from the home.

### Officer Salas Supervises The Removal of Mr. Petricig From The Home

15.     On August 30, 2016, Mr. Petricig came to Ms. Klemp-Hahn's home as planned, along with two Forest Park police officers: Officer Scott McClintock and Defendant Roberto Salas.

16.     Ms. Klemp-Hahn had had several prior contacts with Officer McClintock in connection with her history of domestic abuse, but to the best of her recollection, she had no prior contact with Officer Salas.

17.     During the move-out, Officer McClintock remained with Mr. Petricig as he gathered his things, while Defendant Roberto Salas remained in Ms. Klemp-Hahn's company.

18.     Ms. Klemp-Hahn was very nervous and under enormous stress to be back in the presence of Mr. Petricig.

19.     As they waited, Ms. Klemp-Hahn engaged in nervous small talk with Defendant Salas.

20.     As an experienced and properly trained police officer, Defendant Salas knew it was appropriate to defuse potentially combative situations by utilizing verbal communication skills. By engaging in friendly small talk with Ms. Klemp-Hahn, Defendant Salas was attempting to maintain calmness in a tense situation.

21.     Before leaving Ms. Klemp-Hahn's home on August 30, Defendant Salas gave Ms. Klemp-Hahn his Forest Park Police Department business card. He invited her to contact him anytime if she ever needed help with anything, or even if she just needed a cup of coffee.

22.     Ms. Klemp-Hahn accepted his card and indicated that she would contact him. Ms. Klemp-Hahn accept the card because she thought it would be a good idea to develop a positive relationship with officers like Salas, who she anticipated she might need to rely upon to enforce the order of protection against Mr. Petricig.

23.     Two days later, Ms. Klemp-Hahn contacted Defendant Salas to take him up on his offer of coffee.

24.     Defendant Salas indicated he would stop by the following day, while he was on duty.

25.     Part of Defendant Salas's duties as a police officer was to maintain cordial relationships with Forest Park citizens, so that citizens feel comfortable with their police force, are willing to report crime to their police force, and are willing to cooperate with the police force's criminal investigation.

26.     Defendant Salas agreed to come to Ms. Klemp-Hahn's home in part because he wished to maintain a cordial and cooperative relationship between Ms. Klemp-Hahn and members of the Forest Park Police Department.

**Defendant Salas Sexually Assaults Ms. Klemp-Hahn**

27.     Defendant Salas arrived at Ms. Klemp-Hahn's home around 1:30pm on September 2, 2016. He pulled up in a Forest Park Police Department police car, wearing his full police uniform.

28.     Ms. Klemp-Hahn allowed Defendant Salas into her home because he was a police officer, in uniform, and she wished to continue her cordial relationship with members of the Forest Park police department.

29.     On September 2, 2016, Ms. Klemp-Hahn had no intention of engaging in any type of sexual contact with Defendant Salas when he arrived at her home.

30.     Within moments of his arrival, Defendant Salas began kissing Ms. Klemp-Hahn, completely unprompted.

31.     Ms. Klemp-Hahn was deeply shocked and afraid. Ms. Klemp-Hahn had neither done nor said anything to Defendant Salas to indicate that such an advance would be welcome.

32.     Defendant Salas proceeded to sexually assault Ms. Klemp-Hahn.

33.     At no point did Ms. Klemp-Hahn want or consent to sexual contact from Officer Salas.

34.     While Defendant Salas was sexually assaulting Ms. Klemp-Hahn, with his body physically on top of Ms. Klemp-Hahn's, he received a communication on his police radio, which was affixed to his shoulder.

35.     Defendant Salas ordered Ms. Klemp-Hahn to be quiet while he responded to the radio communication.

36.     As soon as he finished communicating over the radio, Officer Salas got off of Ms. Klemp-Hahn and hurriedly left Ms. Klemp-Hahn's home.

37.     Stunned, terrified, and in physical pain, Ms. Klemp-Hahn did not know what to do. She knew she could not call the Forest Park Police Department for assistance because a Forest Park police officer had just raped her. However, she feared that if she did not do something, Officer Salas might come by the next day while she was home alone and rape her again.

5

38.     Unsure of where to turn, Mr. Klemp-Hahn contacted a domestic violence hotline and an attorney. At their urging, Ms. Klemp-Hahn reported the assault to the Illinois State Police that evening and went to the hospital where a rape kit was performed.

39.     The Illinois State Police is currently investigating the incident, for possible criminal charges.

40.     Months later, Ms. Klemp-Hahn remains terrified of Defendant Salas, who, on information and belief, is still employed at the police station just short distance down the street from her home.

41.     As a result of Defendant Salas's actions, Ms. Klemp-Hahn is fearful in her own home, not only of her abusive husband, but now also of the police who are supposed to serve and protect her and her son.

## Count I - 42 U.S.C. § 1983
## Fourth Amendment

42.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

43.     As described in the preceding paragraphs, Officer Salas violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.

44.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, willfully, and/or with reckless indifference to Plaintiff's rights.

45.     The misconduct described in this Count was undertaken by Officer Salas within the scope of his employment with the Village of Forest Park.

46.     The misconduct described in this Count was undertaken under color of law.

47.     The Village of Forest Park Police Department maintained a policy of failing to adequately train, supervise, discipline, and control its officers such that a pattern of sexual misconduct by Forest Park police officers has emerged in recent years, for example:

      a.  In or around 2003 a former Chief of Police was discharged for sexual harassment;

      b.  In 2007 an officer committed a sexual assault against a civilian;

      c.  In 2008 an officer committed sexual harassment;

      d.  In 2009 two police officers committed sexual harassment;

      e.  In 2010 an officer was accused of sexual harassment and thereafter resigned; and

      f.  In 2011 an officer sexually assaulted a civilian intern for the Forest Park Police Department

48.     On information and belief, policymakers for the Village of Forest Park were on notice prior of this pattern of sexual misconduct as of September 2016 and did not take meaningful steps to address the problem, thereby exhibiting deliberate indifference.

49.     In this way, the policies and customs of the Village of Forest Park were the moving force behind Officer Salas's misconduct.

50.     As a result of this misconduct described in this Count, Plaintiff has suffered injuries, including but not limited to physical injury and emotional distress.

**Count II - 42 U.S.C. § 1983**
**Equal Protection**

51.     Each Paragraph of this Complaint is incorporated as if fully stated herein.

52.     As described more fully above, Defendant denied Plaintiff equal protection of the law in violation of her constitutional rights.

53.     The misconduct described in this count was motivated by gender animus and constituted purposeful discrimination.

54.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, willfully, and/or with reckless indifference to Plaintiff's rights.

55.     The misconduct described in this Count was undertaken by Officer Salas within the scope of his employment with the Village of Forest Park.

56.     The misconduct described in this Count was undertaken under color of law.

57.     The misconduct described in this Count was undertaken pursuant to the policies and customs of the Village of Forest Park in the manner described more fully above.

58.     As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to physical injury and emotional distress.

## Count III - 42 U.S.C. § 1983
## Due Process

59.     Each Paragraph of this Complaint is incorporated as if fully stated herein.

60.     As described more fully above, Defendants denied Plaintiff due process of law in that they engaged in arbitrary government action that deprived her of her liberty and was so malfeasant as to shock the conscience.

61.     As described more fully above, Defendant Salas placed Plaintiff in a position of danger that she would not have otherwise faced and increased her risk of harm, and in so doing assumed a duty to protect her but failed to do so.

62. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, willfully, and/or with reckless indifference to Plaintiff's rights.

63. The misconduct described in this Count was undertaken by Officer Salas within the scope of his employment with the Village of Forest Park.

64. The misconduct described in this Count was undertaken under color of law.

65. The misconduct described in this Count was undertaken pursuant to the policies and customs of the Village of Forest Park in the manner described more fully above.

66. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to physical injury and emotional distress.

**Count IV – 740 ILCS 82 *et seq.***
**Illinois Gender Violence Act**

67. Each Paragraph of this Complaint is incorporated as if fully stated herein.

68. As described more fully above, the conduct of Officer Salas toward Plaintiff constituted a physical intrusion of a sexual nature under coercive conditions. Defendant's actions constituted unjustified and offensive physical contact. Defendant's conduct proximately caused Plaintiff's injuries.

69. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, willfully, and/or with reckless indifference to Plaintiff's rights.

70. The misconduct described in this Count was undertaken by Defendant Officer Salas within the scope of their employment such that his employer, Village of Forest Park, is liable for his actions.

71. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including physical injury and emotional distress.

9

## Count V – Assault and Battery

72.     Each Paragraph of this Complaint is incorporated as if fully stated herein.

73.     As described more fully above, the conduct of the Defendant Officer Salas constituted unjustified and offensive physical contact.   Defendants' conduct proximately caused Plaintiff's injuries.

74.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, willfully, and/or with reckless indifference to Plaintiff's rights.

75.     The misconduct described in this Count was undertaken by Defendant Officer Salas within the scope of their employment such that his employer, Village of Forest Park, is liable for his actions.

76.     As a result of the misconduct described in this Count, Plaintiff has suffered damages, including physical injury and emotional distress.

## Count VI – State Law Claim
## Respondeat Superior

77.     Each Paragraph of this Complaint is incorporated as if fully stated herein.

78.     In committing the acts alleged in the preceding paragraphs, Officer Salas was a member and agent of the Village of Forest Park, acting at all relevant times within the scope of his employment.

79.     Defendant Village of Forest Park is liable as principal for all torts committed by its agents.

## Count VII – Indemnification

80.     Each of the foregoing paragraphs is incorporated as if fully stated herein.

81.     Illinois law requires public entities to pay any tort judgment for compensatory

10

damages for which employees are liable within the scope of their employment activities.

82.     Defendant Salas was an employee of the Village of Forest Park who acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, Heather Klemp-Hahn, respectfully requests that this Court enter judgment in her favor and against Defendants Roberto Salas and Village of Forest Park, awarding compensatory damages and attorneys' fees, as well as punitive damages against Defendant Salas as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, Heather Klemp-Hahn, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

     /s/ Elizabeth Mazur
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Elizabeth Mazur
LOEVY & LOEVY
311 N Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900